# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

**UNITED STATES OF AMERICA**

v.  No. 3:23-cr-94-BJB

**THOMAS GUNTER, ET AL.**

### OPINION & ORDER DENYING MOTION TO ALLOW REMOTE TESTIMONY

The United States has accused Thomas Gunter and Carmen Wren of trafficking methamphetamine as part of a large conspiracy. The third superseding indictment charges Gunter and Wren with a total of 17 offenses. DN 246. Several co-defendants have pled guilty, but these two have exercised their constitutional right to a jury trial. During the final pretrial conference (DN 257), the Court denied without prejudice the United States' motion (DN 192) to allow Tiffany Van De Mark, a DEA chemist, to testify over a Zoom videoconference link rather than live and in person. Her testimony, as proffered, concerns Van De Mark's chemical analysis of three substances that the Government seized and plans to offer as evidence of drug identity, weight, and purity.

The Court denied that motion because the United States relied on two unhelpful sources: the Federal Rules of *Civil* Procedure and Van De Mark's recent remote testimony in an unrelated trial. Neither addressed what appeared to be the relevant standard for deciding whether remote testimony may be offered consistent with the Confrontation Clause and the Federal Rules of Criminal Procedure. *See United States v. Benson*, 79 F. App'x 813, 820–21 (6th Cir. 2003) (addressing this question). Nor did they surface in any judicial decision authorizing her prior remote testimony. No such opinion existed because that testimony—it turns out—rested on the parties' agreement, not the court's overruling of any objection to the remote testimony. *See United States v. Fellmy*, No. 5:24-cr-6, 2024 WL 5040927, at DN 33 (E.D. Ky. Jan. 16, 2025).

Before trial began, the United States renewed its motion, briefed the proper legal standard, and tendered a note from Van De Mark's doctor. DNs 266 (motion) & 266-1 (doctor's note). Gunter objected that remote testimony would violate the Confrontation Clause and hinder his ability to cross-examine the witness's technical extrapolations from the data in her report. Because the United States has failed to demonstrate exceptional circumstances that would authorize remote testimony consistent with the Confrontation Clause's protection of the accused's right "to be

1

confronted with the witnesses against him," the Court denies the United States' motion to allow Van De Mark's remote testimony.

The Sixth Amendment "guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Coy v. Iowa*, 487 U.S. 1012, 1016 (1988). Courts have nevertheless allowed witnesses to testify remotely under narrow circumstances that respect a defendant's right to confront the witnesses against him or her. *See United States v. Burke*, 345 F.3d 416, 425 (6th Cir. 2003). An unpublished 2003 Sixth Circuit opinion, for example, followed Second Circuit precedent looking to Federal Rule of Criminal Procedure 15 (which addresses the use of videotaped deposition testimony at trial‡) to assess the lawfulness of live-but-remote video testimony by a material witness who is otherwise unavailable in the courtroom. That decision, *United States v. Benson*, held that a district court didn't abuse its discretion in allowing an aged witness to testify via videoconference "because she was too ill to travel." 79 F. App'x at 820. The underlying Second Circuit precedent similarly blessed Judge Weinstein's decision allowing a dying witness to testify during a mob trial via videoconference based "upon a finding of exceptional circumstances" that "furthe[red] the interest of justice" within the meaning of Rule 15. *United States v. Gigante*, 166 F.3d 75, 80–81 (2d Cir. 1999).

Since those turn-of-the-century decisions, of course, Confrontation Clause doctrine hasn't remained static. *See, e.g.*, *Crawford v. Washington,* 541 U.S. 36, 53–69 (2004); Edward K. Cheng & Monica A. Miecznikowski, Crawford*'s Revolutions*, 57 U. MICH. J.L. REFORM 869, 879 (2024). No party here has addressed any of those developments—not even those that bear directly on the expert testimony of drug chemists. *See Williams v. Illinois,* 567 U.S. 50 (2012); *Bullcoming v. New Mexico,* 564 U.S. 647 (2011); *Melendez-Diaz v. Massachusetts,* 557 U.S. 305 (2009).

To be sure, this caselaw hasn't always developed along smooth lines and, even still, doesn't appear to have reached its angle of repose. *See, e.g.*, *Smith v. Arizona*, 144 S. Ct. 1785 (2024) (restricting the use of trial testimony by "substitute experts"). Yet the post-2003 Supreme Court plainly hasn't made it *easier* for prosecutors to offer distant testimony from witnesses not speaking live and in person before criminal defendants and the jurors who'll decide their liberty. *See* Stephanos Bibas, *Originalism and Formalism in Criminal Procedure: The Triumph of Justice Scalia, the Unlikely Friend of Criminal Defendants?*, 94 GEO. L.J. 183, 189–92 (2005) ("*Crawford*'s formalistic rule … serves the historical goal of constraining judicial discretion and testing evidence before jurors' eyes."). Even and perhaps especially in

---

‡ Rule 15 allows parties to move to depose a prospective witness "in order to preserve testimony for trial" when "exceptional circumstances" exist. FED. R. CRIM. P. 15(a)(1). The deposition must, among other things, occur according to the same "scope and manner of … examination and cross-examination" that "would be allowed during trial. FED. R. CRIM. P. 15(e)(2). So long as the deposition is admissible under the Federal Rules of Evidence, a party may use "all or part" or that deposition at trial. FED. R. CRIM. P. 15(f).

our Zoom era, moreover, live testimony is important not simply to ensure reliable testimony and fundamental fairness; it also helps to solemnize criminal jury trials: "Demanding confrontation may *correlate* with greater reliability in factfinding, but reliability is not its *raison d'etre*. Confrontation instead is about dignity and legitimacy." Cheng & Miecznikowski at 879 (emphasis in original). Judges should not lightly excuse witnesses and prosecutors from this intentionally weighty burden—even when remote testimony might seem (at least anticipatorily) to be brief, marginal, and efficient. That is surely part of the reason why the Supreme Court rejected a proposal by the Rules Advisory Committee to allow confrontation by two-way video transmission. Explaining that decision to Congress, Justice Scalia emphasized that "a purpose of the Confrontation Clause is ordinarily to compel accusers to make their accusations in the *defendant*'s presence, which is not equivalent to making them in a room that contains a television set beaming electrons that portray the defendant's image." 207 F.R.D. 89, 94 (2002).

Even assuming remote testimony is sometimes appropriate, and even assuming Van De Mark's testimony here would comply with the requirements of Rule 15, the United States hasn't shown that "exceptional circumstances" justify Van De Mark's remote testimony. *Gigante*, 166 F.3d at 81. A note from her doctor indicates that she *can* testify in person—so long as she travels with her child and husband. *See* DN 266-1. The sole document supporting the Government's request, therefore, contemplates in-person rather than remote testimony. To allow the Government to better explain its concerns, the Court nevertheless held a brief voir dire with Van De Mark outside the presence of the jury. Under oath, she indicated that she *would* testify in person if the Court denied the Government's motion. Her main concern was financial: the cost of her husband's plane ticket. That's an expense that she has already incurred and that she believes the Government ought to cover (though it hasn't yet).

Although the difference between remote and live testimony might not be material to this jury in this case regarding this witness, the constitutional principle is surely worth more than the cost of a domestic plane ticket. The Sixth Amendment speaks to the protection of the criminally accused rather than the convenience of their accusers. It "commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Crawford*, 541 U.S. at 61. And examination, courts have long presumed, should happen in person. Because the United States has not demonstrated any exceptional circumstances why its chemist must avoid that crucible, the Court denies the renewed motion for remote testimony.

Benjamin Beaton, District Judge
United States District Court

3

May 30, 2025